# The Lehigh Valley Coal Company
## v.
# S. W. Curtis.

*Sales—Contract for Sale of Coal, Subject to Order of Vendee—Reasonable Time—Evidence.*

In the construction of a contract for the sale of a large quantity of coal, subject to the order of the vendee, it is *held:* That the law implies that the coal was to be ordered within a reasonable time; that what was a reasonable time was a question of fact to be determined from the evidence presented tending to show what the parties understood would be reasonable; that their letters, the season of the year and the usual course of business should be considered in determining such reasonable time; and that, in view of all the evidence, the time, within which the vendee was bound to order coal and the vendor to deliver it, was the time between the execution of the contract, in June, 1879, and the opening of navigation in the spring of 1880.

[Opinion filed February 2, 1887.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Statement *Per Curiam.* This was an action in *assumpsit* brought by appellee to recover damages for a failure by appellant to deliver coal ordered under a contract. The evidence showed that appellee wrote to appellant the following letter:

"GENEVA, May 14, '79.

"MR. R. M. CHERRIE.

"*Dear Sir:* At what price and upon what terms can you sell me a cargo of hard coal, say about 600 tons, 400 chestnut and 200 range, or about that proportion, delivered on cars in Chicago, and at what price can you sell me 600 or 700 tons, all rail coal, about the same proportions as to size, delivered in Chicago, as I may want it during the season.

"Very truly,
"S. W. CURTIS."

The foregoing was replied to as follows:

"CHICAGO, May 15, 1879.

"S. W. CURTIS, ESQ., Geneva, Ill.

"*Dear Sir:* In reply to yours of the 14th, I will say, we will sell you a cargo of say 600 tons nut and 200 tons stove, delivered on C. & N. W. R. R. cars here at $3.40 per ton for the nut, and $3.50 for the stove, all 2,000 lbs. I will also sell you 700 tons all rail coal, delivered to you here on cars as called for, at $3.85 per ton, 2,000 lbs. I shall be pleased to have your order, and shall send you very nice coal. The vessel coal I will make for immediate shipment. The rail coal I have made you the only proposition I have made this season for future delivery. I will hold this open all this week for your acceptance.        "Yours truly,

"R. M. CHERRIE, Agent."

On the 18th of June following, Curtis came to Chicago and went to the office of appellant, and there the following memorandum was signed:

"CHICAGO, 18th June, 1871.

"S. W. CURTIS, Esq., Geneva, Ill.

"*Dear Sir:*   We will sell you (700) seven hundred tons of all rail coal, to be delivered as ordered at $3.85 per ton, of 2000 lbs., on track Chicago, for all sizes anthracite coal.

"Yours truly,

"R. M. CHERRIE, Agent.

"Accepted.

"S. W. CURTIS.

"Terms cash first of each month following the delivery for what coal was delivered the previous month.

"S. W. CURTIS.                    CHERRIE, Agent."

From time to time prior to May 1, 1880, Curtis ordered and received from appellant 360 tons and 600 lbs. of coal, paying therefor the contract price, and on May 7, 1880, paid appellant all that was due on all coal that had been received by him prior to that date.

On July 22, 1880, Curtis sent to appellant an order for one car of chestnut coal. The car load was sent billed at $5.72 per ton. In September appellee demanded the balance of the coal under the contract and appellant's agent, Cherrie, claimed that the contract expired with the season, which he claimed ran from May 1st one year to May 1st of another. Some four witnesses who were well acquainted with the coal business in Chicago testified that there was no usage in such business by which all contracts for the sale of coal in bulk, when no time was mentioned, meant for or during the season, and further that the season meant the time between the opening of navigation in one year and the opening of navigation in the next. Appellee testified that he never heard of such a usage, and did not know what the term "season" meant.

The court admitted all the evidence offered and found for the appellee assessing his damages at $611.59. An exception was taken to the finding and the case is brought here by appeal.

Mr. FREDERIC ULLMAN, for appellant.

The contract must be gathered from the whole correspondence, and not alone from the last letter or memorandum.

The contract or memorandum reads that the coal is " to be delivered as ordered." The letters explain the meaning of this to be as ordered during the season, and for the purpose of such explanation, we submit they were clearly competent. Atwood v. Cobb, 16 Pick. 231; Cocker v. The Franklin H. & F. Co., 3 Sum. 532; Ellis v. Thompson, 3 Mees. & W. 452.

The custom shown by the evidence, that in such a contract where nothing was said as to the time within which delivery should be made it was understood that the contract expires with the season, fulfils all the legal requisites of a custom. It was shown to be of long standing and universal. It is reasonable. It was proved by a number of witnesses. It is not opposed to any principle of general policy, nor inconsistent with the terms of the agreement between the parties, or against the established principles of law. It therefore entered into and formed a part of the contract in question. Doane v. Dunham, 79 Ill. 131; Lonergan v. Stewart, 55 Ill. 44.

Without supplying the omission as to the time of delivery, that is, standing on the memorandum of the contract alone, the plaintiff had no case, the memorandum being a mere optional contract and void. Ch. 38, R. S., Sec. 130; Pixley v. Boynton, 79 Ill. 353; Logan v. Musick, 81 Ill. 419.

We submit that the memorandum alone, if treated as the contract, is void for the further reason that it has no mutuality.

Curtis did not agree to do anything except to pay for such coal as he might order. He did not agree to buy 700 tons or to order 700 tons or to pay for 700 tons. He in fact, agreed to nothing, and brings himself squarely within the rule as to want of mutuality, as laid down in Bailey v. Austrian, 19 Minn. 535; C. & G. E. R. R. Co. v Dane, 43 N. Y. 240; H. & T. C. R'y Co. v. Mitchell, 38 Tex. 94.

Mr. F. W. TOURTELLOTTE, for appellee.

*Per Curiam.* The memorandum fixes all the terms of the sale between the parties, except the time within which the

coal was to be ordered by appellee. The law would imply that the coal was to be ordered by appellee within a reasonable time. What was a reasonable time was a question of fact to be determined by the consideration of any evidence offered which tended to show what, under all circumstances, the parties to the contract understood would be reasonable. The letters which passed between appellee and appellant's agent were proper to be considered in that regard, as also the season of the year when the contract was made, and the nature and the usual course of the business in dealing in and contracting for the sale of large quantities of coal in the Chicago market. Atwood v. Cobb, 16 Pick. 227; Jeffrey v. Watson, 1 Stark. 267.

It very clearly appears from appellee's letter that he opened negotiations with reference to a purchase of 600 or 700 tons of coal, to be taken by him as he should want it during the season. The reply offered to sell him the 700 tons of coal mentioned as called for, and must be held to refer to the former letter asking for the terms, and to mean as called for during the season. It is easy to understand that these letters were in the minds of the parties, though they may not have spoken of them when they signed the memorandum of the sale. It is unlikely, and it seems to us, would be unreasonable, to hold that the parties intended, by the memorandum which was drawn, to make a contract under which coal might be ordered at any time until the Statute of Limitations had run. Without recourse to extrinsic evidence, the court can not say that an order under the contract during the season of 1883 would not be as reasonable as one during the season of 1880. The trial court properly admitted the evidence, but seems to have disregarded all evidence but the memorandum in reaching a conclusion. We think, in view of all the evidence, that a reasonable time within which appellee was bound to order coal and appellant to deliver it, was the time between the signing of the memorandum and the opening of navigation in the spring of 1880. The court below erred in holding that a refusal to deliver coal ordered in July or September, 1880, rendered appellee liable, and the judgment must therefore be reversed and the cause remanded.

*Reversed and remanded.*